GEORGE HAILE AND CAROLINE HAILE, HIS WIFE, PLAINTIFFS, v. THE CLAYTON & HOFF COMPANY.

The driver of a stage coach should, before commencing his journey, ascertain that the passengers are seated, but in his journey over ordinary streets and highways, where frequent or occasional necessary stoppages are made because of crowds, parades or the like, or because of the use of the street or highway by others of the public, he is not bound, before he starts again, to give notice to the passengers that he is about to do so, or to ascertain, in the care required of him, whether the passengers remained seated as before the stoppage was made.   In the commencement of the journey, as soon as the passenger has entered and taken his seat the coach may start, and continue its journey to the end, with such temporary stoppages as are necessary, without notice to the passenger.   The driver has the right to assume that the passengers will remain seated in the position assigned to them, or which they accepted, at the commencement of the journey.

On rule to show cause why verdict should not be set aside.

Argued at June Term, 1896, before BEASLEY, CHIEF JUSTICE, and Justices MAGIE, GARRISON and LIPPINCOTT.

For the plaintiffs, *Edward Kenny.*

For the defendant, *Frank E. Bradner.*

The opinion of the court was delivered by

LIPPINCOTT, J.   On August 3d, 1893, a committee of the Sunday-school of the Davis Memorial Church of Harrison, New Jersey, engaged five stages of the defendant to carry the members of the Sunday-school of that church and their friends to a Sunday-school picnic to be held at Huntly, in the county of Essex.   The supervision of the transportation and of the affair was in the control of one of the members of the Sunday-school committee.   In one of these stages one of the plaintiffs, Caroline Haile, rode to the picnic grounds. The stage or omnibus was a long vehicle, with seats extending along each side, with a top frame and side curtains, and an open doorway at the rear and three steps leading down to the ground from this doorway.   Mrs. Haile and another lady by the name of Mrs. Hooly went in this stage for the purpose of going to the picnic, and also to take charge of the children riding in it to and from the picnic.   No difficulty occurred on the way to the picnic grounds.   On the return journey of the stage the plaintiff, Mrs. Haile, was seated on the right-hand side of the stage, next to the doorway, with her right side to the driver.   Mrs. Hooly sat on the left side of the stage, next to the open doorway, and the children were seated on both sides, between them and the front of the stage or between them and the driver.

The stage, with its load thus seated, proceeded on its way through High street, in the city of Newark, until it reached Springfield avenue, where it was stopped by a policeman to allow some parade or procession, with music, to pass by. There is evidence showing that Mrs. Hooly and some of the children stood up to watch the procession.   The evidence of Mrs. Haile is that she did not stand up; that she was in charge of Mrs. Hooly's luggage while Mrs. Hooly was standing up, and that she could not stand up.   She says that some of the children were standing up on the seats, and that one of the children—a little girl—was standing upon the seat upon which Mrs. Hooly sat, with her body partly out of the window.   Mrs. Haile thought that the child was in danger.

The evidence is that Mrs. Haile raised up and reached over to the other side to get hold of the child, when the driver (the procession having passed) started his horses, and, to use her own language, she " rebounded back," and was thrown out the back door of the stage. A scream was heard by the driver, and the horses were stopped within three feet. There is some difficulty in determining whether she was thrown out of the stage by reason of the starting of the horses, or the rebound when they were again stopped.

The evidence in the case is that the horses attached to the stage were gentle horses and easily managed.

After the parade had passed, the driver pulled the reins and the horses started, as one of the witnesses relates, " suddenly."

The driver did not whip or strike the horses, did not call to them, nor do anything to excite them, and it does not appear that they were excited or frightened. The evidence is that the driver had them under complete control, and stopped them within three feet of starting.

Mrs. Haile appears to have been injured quite seriously, and the action is by her and her husband to recover damages arising by reason of her injury.

A motion to direct a nonsuit was refused.

No evidence was produced on the part of the defendant company, and the motion to direct a verdict was also refused.

The only element of negligence relied on by the plaintiff for a basis of recovery, is that the driver should have notified those inside the stage before starting again that he intended to start. That is the only element of negligence which could, in any event, have been submitted to the jury, and it was the only one submitted.

The declaration in this case appears to have been framed upon the theory that the defendant had negligently constructed the stage or omnibus, by reason of not having the open door at the rear securely guarded. It will be seen by the facts and circumstances of the case that the proof entirely failed upon any such point of default by the defendant. In fact, no proof of the character of negligent construction was offered,

nor could have been of any avail if offered, for, so far as the construction was concerned, those who rode in the stage or omnibus did so at their peril, as it was used by them without protest or remonstrance on their part.   The dangers of it because of its construction were as much known to the plaintiff (Mrs. Haile) as to the defendant.   It was engaged by contract between the Sunday-school committee and the defendant.   It has been a question of some consideration whether the alleged element of negligence relied on is within the averments of the declaration.   But, assuming it to be so, it is quite evident that the mere fact that the driver failed to notify the plaintiff inside the stage that he intended to start again was not a negligent omission which created any liability on the part of the defendant for her injuries.

It seems to me that the reasonable rule is, that before commencing a route a driver should see that his passengers are ready and that it is safe for him to start, but for the frequent or occasional stoppages during the route or journey over ordinary streets and highways, where stoppages are made because of crowds, or parades or the like, it would be a hard rule that would compel a driver to take his attention from his horses to look back into his coach to see if his passengers were safely seated, or to notify them that he intended to start, unless there be some occasion to which his attention is called which requires just this sort of conduct in the exercise of due care for the safety of his passengers.

If this should be the rule, then there should exist no liability because of any dangers arising from having his attention drawn from his horses.

The law cannot, under such circumstances as are presented in this case, require him to care both for his horses and passengers to this extent.

It is necessary in running stages or omnibuses of this character through the streets of a city to make frequent stops. The use of the streets by others makes this absolutely necessary, and in the management of his horses the driver has the right to assume that the passengers will remain in their seats

iu the same position assigned at the commencement of the journey, rather than that they will be attracted by the movements of a various character in the streets so as to require care of him to ascertain whether they still retain safe positions.

To my mind, when the driver was stopped by the policeman for the parade to pass it was not his duty to notify his passengers that he was about to start.

I think the proposition contended for by the defendant can be safely asserted, that when the carrier of an adult passenger for hire in a vehicle provided with seats has once started on the journey, and is stopped by some obstruction in the road or street, it is the duty of the passenger to remain seated, and no obligation rests upon the carrier to notify his passengers that he is about to start again, unless it be that his notice is called to the fact that his passengers are in an unsafe or precarious position or unless some danger presents itself to him rendering this a precaution necessary to take in the exercise of that care required of him.

As soon as a passenger has taken his seat, fairly entered the vehicle and is safely seated, the carrier may start and continue his journey to the end, with such temporary stoppages as are necessary, without further notice to the passenger. *Sherm. & Redf. Neg.* (*4th ed.*), § 508.

It has also been held that the bare fact of whipping horses when about to start a car full of passengers, after stopping, is not negligence on the part of the driver. *May* v. *North Hudson County Railway Co.*, 20 *Vroom* 445.

It is in evidence that after the start had been made the driver heard a scream from the stage or omnibus. It was certainly not a negligent act for him then to stop the horses upon hearing the scream.

It seems to me, as a conclusion, that the trial judge should have ruled that it was not the duty of the driver to notify his passengers that he was about to start and that negligence could not be inferred from the fact of his starting without giving such notice, and without looking to see that all his passengers were seated, and also that the negligence could not

be inferred from the fact of starting the horses in the manner that the driver did start them.

The facts of the case were entirely undisputed, and upon these facts it seems to me that this conclusion of law should have been drawn and the jury should have been so instructed.

This rule to show cause must be made absolute.